RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0062P (6th Cir.)
File Name: 04a0062p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANGELINA MIGUEL,
       *Petitioner,*

    *v.*

IMMIGRATION AND
NATURALIZATION SERVICE,
       *Respondent.*

No. 02-3758

---

On Appeal from the Board of Immigration Appeals.
No. A76 507 819.

Argued: February 4, 2004

Decided and Filed: February 26, 2004

Before: NORRIS, GILMAN, and ROGERS, Circuit
Judges.

---

## COUNSEL

**ARGUED:** Richard R. Renner, TATE & RENNER, Dover,
Ohio, for Petitioner. Mary Jane Candaux, U. S.
DEPARTMENT OF JUSTICE, CIVIL DIVISION,
Washington, D.C., for Respondent. **ON BRIEF:** Richard R.
Renner, TATE & RENNER, Dover, Ohio, Raymond Vasvari,

AMERICAN CIVIL LIBERTIES UNION, Cleveland, Ohio,
for Petitioner. Allen W. Hausman, U. S. DEPARTMENT OF
JUSTICE, CIVIL DIVISION, Washington, D.C., for
Respondent.

---

## OPINION

---

ROGERS, Circuit Judge. Angelina Miguel is a native and
citizen of Guatemala who was discovered by Immigration and
Naturalization Service agents after a warrantless entry into her
home. Miguel claims that the evidence obtained during the
search of her house should have been suppressed because the
search violated the Fourth Amendment. The Immigration
Judge, relying solely on the admissions of Miguel's counsel
during a hearing, decided that Miguel should be removed
regardless of any potential Fourth Amendment violations.
The Board of Immigration Appeals affirmed the decision of
the Immigration Judge. Miguel appeals the denial of her
motion to suppress. Because Miguel's counsel admitted the
relevant facts establishing her removability, and because the
Immigration Judge did not rely on any of the evidence that
Miguel has asked to be suppressed, this court does not need
to reach the potential application of the exclusionary rule to
the entry and seizure of evidence from her home in possible
violation of the Fourth Amendment. Accordingly, we deny
Miguel's petition for review.

Angelina Miguel is a 25-year-old native and citizen of
Guatemala. Miguel apparently entered the United States
"without being admitted or paroled" in 1996 near San Ysidro,
California.

According to Miguel's statement, on or about the morning
of July 7, 1999, Miguel was at her residence in New
Philadelphia, Ohio, with another woman and three children
whom they were babysitting. Miguel was allegedly upstairs

in a bathroom, when Immigration and Naturalization Service ("INS") agents knocked at the door. One of the children apparently answered the door and let in the three agents, who were soon joined by two more agents.

Miguel came downstairs, and the agents announced they were looking for a person named Maria Garza. Miguel then retreated upstairs to a bedroom, but the INS agents soon knocked on the bedroom door. The agents came into the bedroom and began to question Miguel about her immigration status.[1] Apparently believing she had an obligation to answer, Miguel told the agents that she did not have any "papers from the United States" but that she had a birth certificate from Guatemala.

As Miguel retrieved her birth certificate from an envelope in her backpack, an agent allegedly snatched the entire envelope from her hands. The envelope also contained other documents relating to her fiancé and daughter. Miguel was at that time given a Notice to Appear ("NTA") before the Immigration Court.

On October 24, 2000, Miguel filed a motion to suppress all evidence derived from the entry and search of her home. The motion alleged that the INS agents entered her private residence without a valid warrant and failed to advise her of her constitutional rights. On November 8, 2000, the Immigration Judge (the "IJ") in the removal proceeding indicated that an evidentiary hearing should be held on the motion to suppress. On the date set for the evidentiary hearing, Miguel was late. The IJ denied the motion to suppress because Miguel had abandoned it by "her failure to appear" and also because the affidavits did not support a finding of egregious conduct. After Miguel arrived, the IJ did

---

[1] It is unclear whether the women let the agents in or if they just barged in. However, Miguel's motion to suppress indicates that the agents simply opened the door without permission.

not revisit the issue. The IJ then asked Miguel some standard preliminary questions. In response, Miguel's counsel admitted the factual allegations contained in the NTA. Specifically, Miguel's counsel admitted that Miguel was not a citizen of the United States, that she was a native and citizen of Guatemala who entered the United States at an unknown time and place, and that she was not admitted or paroled after inspection by an Immigration Officer. The IJ thereupon sustained the charge of removal and set a hearing date to consider any relief from removal that Miguel sought to pursue. On August 10, 2001, the day of the next hearing, Miguel's counsel stated that Miguel did not qualify for any form of relief. At that hearing, the IJ also indicated that she had denied the motion to suppress during the last hearing. Later that day, the IJ issued a ruling ordering the removal of Miguel to Guatemala.

On Miguel's timely appeal, the Board of Immigration Appeals ("BIA") issued a two-sentence decision affirming the IJ's decision. Miguel petitions this court for review, claiming that the IJ acted arbitrarily and capriciously when she did not hold an evidentiary hearing on Miguel's motion to suppress and that the INS agents acted so egregiously when they entered her home without a warrant as to require the suppression of the evidence gained during that entry.

The decision of the IJ was proper because Miguel admitted that she was an alien, that she was not legally admitted into the United States, and that she has no basis for any form of relief. An evidentiary hearing as to the possible egregious nature of the agents' entry into Miguel's home would therefore have been irrelevant.

Miguel admitted before the IJ that she is a removable alien, and, regardless of whether the evidence at her home should be suppressed, these admissions establish her removability. *See*

8 C.F.R. § 240.10(c) (2000)[2] ("The immigration judge shall require the respondent to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein. *If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent.*" (emphasis added)); 8 U.S.C. § 1361 ("In any removal proceeding . . . the burden of proof shall be upon [the alien] to show the time, place, and manner of his entry into the United States . . . . If such burden of proof is not sustained, such person shall be presumed to be in the United States in violation of law."); *see also INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("In many deportation cases the INS must show only identity and alienage; the burden then shifts to the respondent to prove the time, place, and manner of his entry.").

During a hearing, the IJ specifically asked Miguel, through an interpreter, how she answered the factual allegations contained in the NTA. The NTA indicated that she is not a citizen or national of the United States; that she is a native and citizen of Guatemala; and that she was not admitted or paroled into the United States. Miguel then admitted these factual allegations through counsel. The admissions have not been challenged on appeal.

After Miguel's alienage was established by her admission and was not contradicted by any additional evidence in the record, Miguel needed to demonstrate by clear and convincing evidence that she is "lawfully in the United States pursuant to a prior admission, [or that] she is clearly and beyond a doubt entitled to be admitted to the United States

---

[2]8 C.F.R. § 240 has been subsequently renumbered as 8 C.F.R. § 1240.

and is not inadmissible as charged." 8 C.F.R. § 240.8(c) (2000). To avoid removal, Miguel could also show that she is eligible for some type of relief from removal, but she bears the burden of proof in making such a showing. 8 C.F.R. § 240.8(d) (2000). Miguel admitted later, however, that she does not qualify for any form of relief.

Miguel does not contest the jurisdiction of the Immigration Court over her person. *See INS v. Lopez-Mendoza*, 468 U.S 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."). Instead, Miguel argues that the IJ improperly denied her motion to suppress without an evidentiary hearing.

However, even a favorable ruling for Miguel on her motion to suppress would not change her established removablity because she has not asserted any applicable basis for relief from removal.[3] In *Matter of Burgos*, 15 I. & N. Dec. 278, 279-80 (BIA 1975), the BIA concluded that the IJ properly found the aliens deportable because of their admissions. The aliens in *Burgos* had submitted a motion to suppress before the IJ, but the IJ denied this motion. *Id.* at 270. In *Burgos*, as in the present case, the administrative record did not contain any evidence that was obtained in the search, and the aliens essentially argued that "their physical presence is the evidence to be suppressed as that presence was obtained illegally." *Id.* at 280. However, the BIA held that after the *Burgos* aliens admitted their alienage, the burden shifted to them to prove their time, place, and manner of entry into this country. *Id.* The *Burgos* opinion continued:

---

[3]The Supreme Court in *Lopez-Mendoza* held that the Fourth Amendment exclusionary rule does not apply in deportation proceedings, but appeared to leave open the possibility that the exclusionary rule might apply in cases involving "egregious violations" of the Fourth Amendment. *Lopez-Mendoza*, 468 U.S. at 1050-51 (plurality opinion). Miguel asserts that an "egregious violation" occurred in her case.

Since they failed to sustain that burden, they are presumed to be in the United States in violation of law. The [INS] did not rely upon any statement taken or any evidence seized at the time of the [the aliens'] arrest to establish deportability.  Thus, even if the arrest was illegal, this would not invalidate the subsequent deportation proceedings . . . .

*Id*.

The Supreme Court's decision in *Lopez Mendoza* did not change the analysis of *Burgos*.  *See, e.g., Yadidi v. INS*, No. 92-70042, 1993 WL 306238, at **1 (9th Cir. Aug. 12, 1993) ("Yadidi's admissions at the deportation hearing formed the basis of the IJ's deportation order.  Thus, the IJ did not err by denying Yadidi's motion to continue or by refusing to consider further his motion to suppress.").  Likewise, the evidence of Miguel's removability did not come from an allegedly illegal entry, search, arrest, or interrogation, but instead the evidence of her alienage and removability came from her own admissions at a subsequent removal hearing.

As the IJ did not rely on any of the evidence that Miguel asked to be suppressed, this court does not need to reach the potential application of the exclusionary rule to the entry and seizure of evidence from her home in possible violation of the Fourth Amendment.

For the foregoing reasons, we deny Miguel's petition for review.